J. Lawrence McCormley
State Bar No. 005005
Lance R. Broberg
State Bar No. 024103

**TB TIFFANY & BOSCO**
P.A.

THIRD FLOOR CAMELBACK ESPLANADE II
2525 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016B4237
TELEPHONE: (602) 255-6000
FACSIMILE: (602) 255-0103
EMAIL: lrb@tblaw.com

*Attorneys for Pacific Coast Mortgage, Inc.*

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | (In proceedings under Chapter 13) |
| JULIA VASQUEZ, | Case No. 4:08-bk-15510-EWH |
| Debtor. | Adv. No. 4:08-ap-00794-EWH |
| JULIA VASQUEZ, | |
| Plaintiff/Debtor, | **JOINT PRETRIAL STATEMENT** |
| v. | |
| PACIFIC COAST MORTGAGE, INC., an Arizona corporation; ANDREW R. FRANK and CANDICE CHARVOZ, husband and wife; SAXON MORTGAGE, INC., a Virginia corporation; LAWRENCE E. FOURNIER and MARY LOUIS FOURNIER, husband and wife, as trustees of The Fournier Revocable Trust; PRIME CAPITAL, INC., an Arizona corporation, | |
| Defendants. | |

The parties hereby submit their Joint Pretrial Statement.

429887

**I.     Uncontested Facts:**

   A.    Vasquez is a 56 year old single woman.

   B.    Vasquez is an American citizen.

   C.    Vasquez has a 6th grade education, which she received in Mexico, though Vasquez executed a document that was provided to PCM stating that she had the equivalent of a 12th grade education.

   D.    Vasquez has a limited understanding of the English language.

   E.    Vasquez is the mother of two adult sons, which she raised on her own.

   F.    Vasquez's income comes from a part-time job in the kitchen at Sunnyside High School in Tucson and from Social Security disability payments.

   G.    Vasquez's receives disability checks because she has been deemed 100% disabled because of bad knees. Vasquez has had multiple operations on her knees.

   H.    In or around October 1982, Debtor purchased residential property located at 402 West Melbridge, Tucson, Arizona, 85706 (the "Property"). Debtor purchased the home with the assistance of the United States Department of Housing and Urban Development ("HUD"). The purchase price was $46,800. Debtor paid $1,500 in earnest money and obtained financing for approximately $46,200 (the "HUD Loan"). Debtor's contractual arrangement with HUD was such that HUD would partly pay the monthly mortgage payments. For the next 22 years, Debtor made monthly payments of between $271 and $597 per month for the Property. Pacific Coast Mortgage, Inc. ("PCM") was not involved in any manner with the HUD Loan.

   H.    In the 22 years following the HUD Loan, Debtor was late in making her payments on multiple occasions, each requiring an agreement or arrangement with her lender to bring the loan current. Additionally, during this period, Debtor had multiple judgments entered against her which were recorded as liens against the Property, including a racketeering lien.

J. In approximately mid-2004 Debtor had fallen behind on her HUD Loan payments again. Debtor had received notice of a trustee's sale for the Property. The principal amount due on the HUD loan was approximately $32,806. Debtor, on her own initiative, called and made an appointment with PCM. Debtor met with Alfonso Aguirre and spoke with Gustavo Molina, both employees with PCM. Both Alfonso Aguirre and Gustavo Molina speak Spanish fluently. Debtor ultimately obtained a refinance of her Property with the lender being two individuals – Defendants Frank and Charvoz (the "Refinanced Loan").

K. An appraisal, dated August 30, 2004, was prepared in conjunction with the Refinanced Loan, and estimated the value of the Property to be $111,000.00. Debtor's equity in the Property was approximately $78,000.

L. On or about September 17, 2004, Debtor closed on the Refinanced Loan. $8,222.09 in settlement charges were incurred. The HUD Loan was paid off. Pursuant to the Debtor's HUD contract, $20,051.00 was used to repay HUD for its 22 years worth of subsidy payments. And, Debtor received $10,420.08 in cash. The gross loan amount and all deductions were listed in the closing documents or were otherwise in written form and in Debtor's possession prior to the close of the Refinanced Loan. The HUD-1 Settlement Statement for the Refinanced Loan also showed these disbursements.

M. The closing documents provided to and signed by Debtor for the Refinanced Loan listed the interest rate as 12%. The closing documents provided to and signed by Debtor identified that the Refinanced Loan was payable on or before October 1, 2007.

N. In or around January 2005, approximately four months later, Debtor received notice that she was behind on her payments under the Refinanced Loan. On or around September 16, 2005, Debtor again refinanced the Property, with PCM acting at the mortgage broker for the September 2005 refinancing.

429887    3
JOINT PRETRIAL STATEMENT

O. In approximately 2007, Debtor obtained a second mortgage on the Property (the "2007 Transaction"). PCM was not involved in the 2007 Transaction in any way.

P. Debtor made payments on the 2007 Transaction for a while, but ultimately fell into default and filed for bankruptcy protection in 2008. The above-captioned adversary proceeding followed.

**II. Contested Facts:**

A. Whether or not Debtor was informed that she would be required to repay HUD upon close of the Refinanced Loan.

    a. Debtor: No

    b. PCM: Yes

B. Whether or not Debtor was informed that the Refinanced Loan was due in approximately 3 years.

    a. Debtor: No

    b. PCM: Yes

C. Whether or not Debtor was informed of the interest rate of the Refinanced Loan.

    a. Debtor: No

    b. PCM: Yes

D. Whether, despite the information contained in the loan documents, PCM misled Debtor regarding the terms of the loan.

    a. Debtor: Yes

    b. PCM: No

E. Whether Debtor had any ability to pay the balance of the Refinanced Loan in 3 years after taking that loan.

    a. Debtor: No

    b. PCM: Yes

F.   Whether PCM intentionally misrepresented Debtor's income on the loan application associated with the Refinanced Loan in order to insure that Debtor would qualify for the Refinanced Loan.

    a. Debtor:     Yes

    b. PCM:        No

**III.   Contested Issues of Law:**

**A.   Whether or not Debtor's fraudulent inducement claim – the only claim remaining against PCM – is barred by the applicable statute of limitations.**

    a.   Debtor:   No.

    b.   PCM:      Yes.  A claim for fraudulent inducement is subject to a three-year statute of limitation. A.R.S. § 12-543.  The statute of limitations begins to run when Debtor knew or should have known of PCM's alleged misrepresentations or omissions.  *Giles Const., Inc. v. Commercial Federal Bank*, 2006 WL 2711501, 8 (D.Ariz. 2006).  Debtor knew or should have known of the HUD payment in 2004 – she had the contract requiring repayment on refinance in her possession for 22 years prior to the Refinanced Loan.  Furthermore, the HUD repayment was paid in 2004 with the proceeds from the Refinanced Loan.  Even if Debtor had forgotten her agreement with HUD, Debtor knew or should have known of the HUD payment when the HUD payment was actually paid and when she received and signed the HUD-1 Settlement Statement on September 17, 2004.  Similarly, the Refinanced Loandocuments provided to and signed by Debtor expressly stated that the Refinanced Loanwas payable in full on October 1, 2007.

**B.   Whether PCM committed Fraud.**

    a.   Debtor:   Yes.

429887                                                                                                                              5

b. PCM: No. A showing of fraud[1] requires: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) the speaker's intent that the information should be acted upon by the hearer and in a manner reasonably contemplated, (6) the hearer's ignorance of the information's falsity, (7) the hearer's reliance on its truth, (8) the hearer's right to rely thereon, and (9) the hearer's consequent and proximate injury. *Green v. Lisa Frank, Inc.*, 221 Ariz. 138, 211 P.3d 16 (App. 2009); *Taeger v. Catholic Family &Cmty. Servs.,* 196 Ariz. 285, ¶ 28, 995 P.2d 721, 730 (App.1999); *see also Echols v. Beauty Built Homes, Inc.,* 132 Ariz. 498, 500, 647 P.2d 629, 631 (1982). There is no dispute that the terms of the HUD Loan including the repayment requirement, which PCM had nothing to do with, were clearly and accurately set forth in the HUD Loan documents. PCM made no false statement concerning the terms of the HUD Loan. There is no dispute that the term of the Refinanced Loanwas clearly and accurately stated in the Refinanced Loan documents provided to and signed by Debtor. PCM made no false statement regarding the term of the Refinanced Loan.

**C. Whether or not Debtor has Damages.**

a. Debtor: Yes.

b. PCM: No. Debtor is actively contesting the validity of the deed of trust held, apparently, by Deutsche Bank National Trust Company ("Deutsche Bank"). If Debtor prevails, and is discharged through bankruptcy, then Debtor has no damages to allege. Indeed, if Debtor prevails, she will have received cash through the Refinanced Loan (and subsequent refinances) AND will have obtained title free and clear for the Property. Even if Debtor does not prevail against Deutsche Bank, Debtor

---

[1] The elements of fraud and fraudulent inducement are the same – they are alternative names for the same cause of action. *See e.g. Echols v. Beauty Built Homes, Inc.,* 132 Ariz. 498, 500, 647 P.2d 629, 631 (1982).

429887     6

JOINT PRETRIAL STATEMENT

voluntarily sought and obtained multiple additional re-finances for the Property following the 2004 re-finance at issue.

**D.  Whether or not Debtor is entitled to punitive damages.**

    a.  Debtor: Yes.

    b.  PCM: No.

**IV.  Witnesses:**

  **A.  Plaintiff's Witnesses:**

    1. Ms. Julia Vasquez

  **B.  Defendant's Witnesses:**

    1. Mr. Zachary Arnold

    2. Mr. Alfonso Aguirre

    3. Mr. Brian Harvey

    4. Mr. Gustavo Molina

**V.  Defendant's Exhibits:**

The parties have already exchanged exhibits and will exchange exhibit notebooks on or before Friday, April 23, 2010.

RESPECTFULLY SUBMITTED this 20th day of April, 2010.

**TB TIFFANY & BOSCO P.A.**

By: */s/ Lance R. Broberg*
    J. Lawrence McCormley
    Lance R. Broberg
    Third Floor Camelback Esplanade II
    2525 East Camelback Road
    Phoenix, Arizona 85016-4237
    ***Attorneys for Pacific Coast Mortgage, Inc.***

[Signatures included on next page]

**COUNSEL FOR DEBTOR**

By: _/s/ Eric J. McNeilus_
　　　Eric J. McNeilus
　　　HEURLIN SHERLOCK PANAHI
　　　1636 North Swan Road, Suite 200
　　　Tucson, AZ 85712-4096

429887

JOINT PRETRIAL STATEMENT

ORIGINAL filed electronically with the United States Bankruptcy Court, District of Arizona, this 20th day of April, 2010, and a copy mailed the 20th day of April, 2010 to:

Eric J. McNeilus
**HEURLIN SHERLOCK PANAHI**
1636 North Swan Road, Suite 200
Tucson, AZ 85712-4096
*Attorneys for Debtor*

Beverly B. Parker
**SOUTHERN ARIZONA LEGAL AID, INC**.
2342 East Broadway Blvd., Suite 200
Tucson, AZ 85719
*Attorneys for Debtor*

———————————————

429887

9

JOINT PRETRIAL STATEMENT